## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **RICHARD MCMAHON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 25-CV-207-JFJ** |
| | ) | |
| **1. CITY OF BROKEN ARROW,** | ) | |
| **OKLAHOMA, a municipal corporation,** | ) | |
| **2. BROKEN ARROW POLICE** | ) | |
| **DEPARTMENT,** | ) | |
| **3. MICHAEL FERGUSON, and** | ) | |
| **4. UNKNOWN BROKEN ARROW** | ) | |
| **POLICE OFFICERS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Before the Court are (1) Defendant City of Broken Arrow's ("City") Motion to Dismiss (ECF No. 9) and (2) Defendant Broken Arrow Police Department's ("BAPD") Special Appearance and Motion to Dismiss (ECF No. 8). The parties have consented to a magistrate judge presiding over the case. ECF No. 18.

### I.    Factual Background

Plaintiff Richard McMahon ("Plaintiff") alleges the following relevant facts in the Complaint (ECF No. 2). The events giving rise to Plaintiff's claims took place in Broken Arrow, Oklahoma. Compl. ¶ 4. Plaintiff alleges that two separate incidents of constitutional violations occurred against him, both involving Sergeant Michael Ferguson ("Ferguson") of the BAPD. First, on July 28, 2023, Plaintiff reported to police that he had been assaulted and battered by a neighbor. *Id.* ¶ 6. When Ferguson and other BAPD officers responded to the call at Plaintiff's residence, Ferguson accepted Plaintiff's neighbor's version of events without conducting a proper inquiry. *Id.* ¶¶ 6-7. Ferguson ordered Plaintiff to "turn around," but Plaintiff did not comply. *Id.*

¶ 8.  As a result, Ferguson "proceeded to use excessive force, assaulting Plaintiff and subsequently arresting him for 'resisting arrest.'"  *Id.*

Second, on May 29, 2024, Ferguson and four other officers "forcibly entered Plaintiff's home without a warrant or probable cause."  *Id.* ¶ 9.  The purported probable cause for such entry was to investigate a traffic incident, in which Plaintiff was allegedly blocking another vehicle in a cul-de-sac.  *Id.*  Plaintiff alleges the entry was pretextual, and he further alleges the officers used excessive force, "slamming Plaintiff to the ground and causing him physical injury."  *Id.* ¶ 10.  Plaintiff was "detained overnight and released without charges."  *Id.*

Plaintiff alleges both incidents are "reflective of a broader pattern of bias and harassment by the [BAPD] against Plaintiff."  *Id.* ¶ 11.  Plaintiff further alleges "Defendants' actions and inactions – including the failure to monitor, control, train, and discipline their officers – manifest a deliberate indifference to Plaintiff's constitutional rights."  *Id.* ¶ 12.  On April 25, 2025, Plaintiff filed this lawsuit against City, BAPD, Ferguson, and unknown BAPD officers (collectively, "Defendants").[1]

Plaintiff asserts claims under 42 U.S.C. § 1983 against the remaining Defendants for (1) unreasonable seizure in violation of Plaintiff's Fourth Amendment rights (Count I); (2) excessive force in violation of Plaintiff's Fourth Amendment rights (Count II); (3) violation of Plaintiff's due process rights under the Fourteenth Amendment (Count III); (4) constitutional deprivations under the Fourth and Fourteenth Amendments, which resulted from Defendants' individual actions and the policies and customs of City and BAPD (Count IV); and (5) *Monell* municipal liability by City, by demonstrating deliberate indifference to Plaintiff's constitutional rights through its

---

[1] The Court dismissed Ferguson without prejudice from this case on August 13, 2025, due to Plaintiff's failure to effect service on Ferguson by the required deadline or to seek other relief. ECF No. 16.

policies, customs, and failure to adequately train, supervise, and discipline its police officers, including Ferguson (Count V).  Plaintiff further asserts state-law claims against Defendants for (1) malicious prosecution (Count VI); (2) intentional infliction of emotional distress ("IIED"); and (3) negligence against City (Count VIII).[2]

## II.    Motion to Dismiss – City

City seeks dismissal of all claims against it pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff fails to allege sufficiently particular facts to provide notice to City of the claims against it.  City also seeks dismissal of the state-law claims against it for lack of jurisdiction pursuant to Rule 12(b)(1), arguing Plaintiff failed to allege compliance with Oklahoma statutory notice requirements.  Plaintiff responds that his factual allegations are sufficient.

### A.    General Legal Standards

#### 1.    Rule 12(b)(6)

In considering a Rule 12(b)(6) motion, the court must accept all well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the nonmoving party. *See Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1284 (10th Cir. 2008). A court must then determine whether these accepted facts state a facially "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

---

[2] Although titled as a second IIED claim, Count VIII appears to be an Oklahoma claim for negligent training and supervision against City.  Compl. ¶¶ 43-46.

*Id.* (internal quotations omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* at 678 (citation modified).

### 2. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows the Court to dismiss a complaint for lack of subject-matter jurisdiction. "Since federal courts are courts of limited jurisdiction, we presume no jurisdiction exists absent an adequate showing by the party invoking federal jurisdiction." *Siloam Springs Hotel, L.L.C. v. Century Surety Co.*, 906 F.3d 926, 931 (10th Cir. 2018) (quotation omitted). When a party seeks dismissal under Rule 12(b)(1), it can launch either a facial or factual attack on the complaint. *See Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001). As explained below, City has facially attacked Plaintiff's state-law allegations as to the existence of subject matter jurisdiction. In reviewing a facial attack under Rule 12(b)(1), "the district court must accept the allegations in the complaint as true." *Id.* "Dismissal is proper where 'the complaint fails to allege any basis for subject matter jurisdiction over the claims raised therein.'" *Hill v. Dep't of Hum. Servs. & CSE Agency*, No. 20-CV-25-TCK-JFJ, 2020 WL 4677302, at *1 (N.D. Okla. Aug. 12, 2020) (quoting *Harrison v. United States*, 329 F. App'x 179, 181 (10th Cir. 2009)).

### B. Plaintiff Fails to State a Claim for Municipal Liability under § 1983 (Counts I, II, III, IV, and V)

Title 42 U.S.C. § 1983 provides in part that "[e]very person who, under color of any statute . . . subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." Section 1983 liability can lie with a municipality such as City, but only when a constitutional violation is inflicted pursuant to a government policy or custom. *Monell v. Dep't of Soc. Servs. Of City of New*

*York*, 436 U.S. 658, 694 (1978).   Identifying a municipal policy "ensures that a municipality is held liable only for those deprivations resulting from the decision of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 403-04 (1997) (citing *Monell*, 436 U.S. at 694).  Similarly, a municipality may be subject to liability pursuant to a "custom" that has "not been formally approved by an appropriate decisionmaker," based on the theory that "the relevant practice is so widespread as to have the force of law." *Id.* (citing *Monell*, 436 U.S. at 690-91).

> A municipal policy or custom may take any one of five forms:
>
> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions – and the basis for them – of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (citation modified).

In addition to identifying a municipal custom or policy, a plaintiff must plead that there is a "direct causal link between the policy or custom and the injury alleged." *Id.* (quotation omitted). *See Haines v. Fisher*, 82 F.3d 1503, 1507 (10th Cir. 1996) (explaining that the municipality's official policy must be the "moving force for the constitutional violation in order to establish the liability of a government body under § 1983") (citing *Monell*, 436 U.S. at 694).  "Therefore, it is only when the execution of the government's policy or custom inflicts the injury that the municipality may be held liable under § 1983." *Hollingsworth v. Hill*, 110 F.3d 733, 744 (10th Cir. 1997) (citation modified).

City argues that Plaintiff's *Monell* claims fail against it, because Plaintiff does not plead sufficient facts to identify a custom or policy that directly caused his injury. City contends that Plaintiff's pleading instead constitutes bare recitals of the elements of his claims, which are insufficient under the *Iqbal* and *Twombly* pleading standards. It is unclear from the Complaint which of the five bases for *Monell* liability Plaintiff is alleging. Therefore, the Court addresses all five options. Applying the *Monell* requirements to the Complaint, the Court concludes Plaintiff failed to sufficiently plead the required elements, and Plaintiff's § 1983 claims against City are subject to dismissal under Rule 12(b)(6).

### 1. Official Policy

City argues Plaintiff fails to identify any specific unconstitutional policy that caused his injuries. Regarding such official policy, Plaintiff alleges only that City's "policies" demonstrated "deliberate indifference to the constitutional rights of Plaintiff," which is "directly connected to the excessive force, false arrest, and unlawful seizures inflicted upon Plaintiff." Compl. ¶ 30. Plaintiff pleads no facts indicating that City has a specific, unconstitutional formal policy statement or that any specific policy directly caused Plaintiff's injuries. Plaintiff merely recites the elements of a cause of action against a municipality. In his response brief, Plaintiff argues his Complaint contains "detailed allegations" that, "when read in context, are sufficient to put the City on notice that its conduct is being challenged as a moving force behind the constitutional violations." ECF No. 13 at 3. However, Plaintiff's vague allegations are unsupported by any facts, making them insufficient under the *Twombly* pleading standard to survive a motion to dismiss.

### 2. Informal Policy or Custom

City argues Plaintiff fails to plead facts showing an informal policy or custom caused his constitutional injuries. To show a municipality had an informal policy or custom requires pleading that the misconduct was a "widespread practice that, although not authorized by written law or

express municipal policy, is so permanent and well settled as to constitute a 'custom or usage' with the force of law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (quotation omitted). For a practice to be widespread, Plaintiff must allege other similar incidents occurring prior to his own injuries. *See Waller v. City & Cty. of Denver*, 932 F.3d 1277, 1290 (10th Cir. 2019) (rejecting argument that deputy's unprovoked attack on detainee in front of judge was sufficient to infer existence of municipal custom or practice, where plaintiff alleged only one similar incident of excessive force prior to his own injuries). *See also City of Okla. City v. Tuttle*, 471 U.S. 808, 823-24 (1985) (finding "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker"). Here, Plaintiff alleges no facts to show a widespread practice of constitutional violations. Plaintiff alleges no other similar incidents occurring prior to his own injuries.

In his response brief, Plaintiff argues he sufficiently alleged a "custom," because he alleges the incidents against him reflected a "broader pattern of bias and harassment" by the BAPD against Plaintiff. Compl. ¶ 11. However, this vague allegation alone is insufficiently particular to put City on notice of the allegations against it.

Plaintiff further argues he does not need to allege prior incidents, because his allegations are sufficient to allege "single-incident" municipal liability. Such liability may attach in a narrow range of circumstances where a municipal policy or custom of deficient training causes an injury that is "obvious" and "closely related," and the municipality adopted the policy or custom with "deliberate indifference" to the injury. *Valdez v. Macdonald*, 66 F.4th 796, 815, 816-17 (10th Cir. 2023).[3] Plaintiff argues he has sufficiently alleged such single-incident liability, by alleging

_____

[3] "Deliberate indifference" requires satisfying a three-part test: (1) "the municipality's policymakers know to a moral certainty that their employees will confront a given situation"; (2)

7

Ferguson disregarded Plaintiff's evidence, used excessive force without reasonable suspicion or probable cause, entered Plaintiff's home without a warrant, and prosecuted Plaintiff maliciously without probable cause.  However, Plaintiff's allegations merely state the elements of a cause of action.  Plaintiff pleads no facts to demonstrate, for example, that his injuries were the obvious result of a specific municipal policy or custom of deficient training.  *Cf. Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1320 (10th Cir. 2002) (reversing grant of summary judgment on single-incident § 1983 deliberate indifference claim that county failed to train its officers on booking procedures for inmates with obsessive-compulsive disorder, explaining that "given the frequency of the disorder, Davis County's scant procedures on dealing with mental illness and the prebooking officers' apparent ignorance to [plaintiff's] requests for medication, a violation of federal rights is quite possibly a 'plainly obvious' consequence of Davis County's failure to train its prebooking officers to address the symptoms") (quotation omitted); *Stella v. Davis Cty.*, No. 23-4122, 2024 WL 4764694, at *9-10 (10th Cir. Nov. 13, 2024) (affirming finding of municipal liability under single-incident failure-to-train theory, concluding "jury had sufficient evidence to conclude that [jail nurse's] deliberate indifference and [detainee's] resulting death were 'plainly obvious' consequences of the County's lack of nursing protocols and training on how to handle an inevitably recurring medical situation like assessing and monitoring trauma patients for internal bleeding") (citation omitted).  Plaintiff's allegations are insufficiently particular as to how officers were inadequately trained or how his injuries were an "obvious" consequence of that lack of training.

---

"the situation presents the employee with a difficult choice of the sort that training or supervision will make less difficult"; and (3) "the wrong choice will frequently cause the deprivation of a citizen's constitutional rights."  *Id.* at 817 (citation modified).

### 3.    Policymaker Decision

City argues that Plaintiff does not allege any specific decisions by any policymakers that resulted in the deprivation of his constitutional rights. "Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). Here, Plaintiff does not identify any policymakers or any specific action allegedly taken by a policymaker in the Complaint.

In his response brief, Plaintiff argues that it is a question of state law whether an official has final policymaking authority. However, the Compliant does not even attempt to identify a final policymaker or municipal policy that would suffice to put City on notice of the allegations against it. Plaintiff's § 1983 claims against City are not sufficiently pleaded based on a policymaker decision. *See London v. Beaty*, 612 F. App'x 910, 914 (10th Cir. 2015) (finding conclusory allegations against city on Fourth Amendment claim failed to meet *Twombly* standard, where plaintiff "wholly failed" to "identify [the city's] policy-makers and the specific actions they took that resulted in the deprivation of his fourth amendment rights").

### 4.    Ratification

City argues that Plaintiff fails to allege that any specific decisionmakers for City ratified any specific unconstitutional conduct by BAPD officers, such as Fourth or Fourteenth Amendment violations. To establish municipal liability based on ratification, Plaintiff must allege that the officer's specific unconstitutional actions were ratified by final policymakers. *Bryson*, 627 F.3d at 790. Here, Plaintiff alleges City failed to discipline its police officers, including Ferguson (Compl. ¶¶ 12, 30), but Plaintiff fails to provide any specific factual allegations in support.

To the extent Plaintiff alleges this failure demonstrates ratification, such allegations are insufficiently specific to state a claim for municipal liability. *See* Compl. ¶ 12 ("Defendants'

actions and inactions – including the failure to monitor, control, train, and discipline their officers – manifest a deliberate indifference to Plaintiff's constitutional rights."). "Rarely if ever is the failure of a police department to discipline in a specific instance an adequate basis for municipal liability under *Monell*." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 777 (10th Cir. 2013) (citation modified). In his response, Plaintiff merely reiterates his conclusory allegation that City's alleged failure to train, supervise, or discipline "effectively ratified Ferguson's actions or demonstrated acquiescence in a longstanding practice." ECF No. 13 at 6. Plaintiff's allegations do not suffice under the *Twombly* pleading standard based on a ratification theory.

### 5.    Failure to Adequately Train or Supervise Employees

City argues Plaintiff failed to sufficiently allege municipal liability based on failure to train or supervise. "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality . . . can a city be liable for such a failure under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989). To survive a motion to dismiss, a plaintiff "must proffer specific facts regarding the employees' training – when it occurred, who conducted it, or how it was deficient." *Barber v. Town of La Veta*, No. 14-CV-03273-RBJ, 2015 WL 5865105, at *3 (D. Colo. Oct. 8, 2015) (quotation omitted). "Mere conclusory allegations that an officer or group of officers are inadequately trained are not enough to plausibly state a failure to train or supervise claim." *Rehberg v. City of Pueblo*, No. 10-CV-00261-LTB-KLM, 2012 WL 1326575, at *5 (D. Colo. Apr. 17, 2012) (citing *City of Canton*, 489 U.S. at 390-91).

Plaintiff alleges City failed to "adequately train [or] supervise" its police officers, which demonstrated "deliberate indifference" to Plaintiff's constitutional rights. Compl. ¶ 30. *See also* Compl. ¶ 12 ("Defendants' actions and inactions – including the failure to monitor, control, train, and discipline their officers – manifest a deliberate indifference to Plaintiff's constitutional

rights."). Plaintiff alleges no facts to demonstrate any specific training or supervisory deficiencies, or that any such failures reflected a "deliberate" or "conscious" choice by a municipality. Therefore, Plaintiff's municipal liability claims based on failure to train or supervise are inadequately pled under the *Twombly* pleading standard.

### C.    Court Lacks Jurisdiction Over Plaintiff's Oklahoma Tort Claims (Counts VI, VII, and VIII)

City argues the Court lacks jurisdiction over Plaintiff's Oklahoma claims, because Plaintiff failed to plead compliance with the requirements of the Oklahoma Governmental Tort Claims Act ("OGTCA"), Okla. Stat. tit. 51, § 151 *et seq.* City argues dismissal of these claims is appropriate under Federal Rule of Civil Procedure 12(b)(1). Among other notice requirements, the OGTCA requires written notice of a claim against a political subdivision to be filed with the office of the clerk of the governing body. Okla. Stat. tit. 51 § 156(D). *Childers v. Bd. of Commissioners of Oklahoma Cty.*, No. CIV-19-460-F, 2019 WL 4060877, at *3 (W.D. Okla. Aug. 28, 2019). The Complaint does not plead such notice was filed. Plaintiff also does not attempt to explain the deficiency in his response brief. Therefore, Plaintiff's Oklahoma law claims (Counts VI-VIII) are all subject to dismissal without prejudice for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

### D.    Plaintiff Fails to State a Claim Against City for Oklahoma Tort Claims (Counts VI, VII, and VIII)

#### 1.    Malicious Prosecution (Count VI)

City further argues it is immune from Plaintiff's Oklahoma claim for malicious prosecution, and the Court should dismiss this claim under Rule 12(b)(6).[4] A malicious

---

[4] Although the Complaint does not identify the basis for liability regarding this malicious prosecution claim, the parties appear to agree that this claim sounds in Oklahoma law, rather than federal § 1983 liability. Therefore, the Court addresses Count VI as a state law claim.

prosecution claim requires proof of five essential elements: "1) defendant's filing a former action, 2) its successful termination in favor of plaintiff, 3) defendant's want of probable cause for pressing the former action against plaintiff, 4) the presence of malice in defendant's conduct, and 5) damages." *Lierly v. Tidewater Petroleum Corp.*, 139 P.3d 897, 903, *as corrected* (Okla. 2006). Plaintiff's tort claim for malicious prosecution against City would fall under the OGTCA, which "is the exclusive remedy for an injured plaintiff to recover against a governmental entity in tort." *Nail v. City of Henryetta*, 911 P.2d 914, 917 (Okla. 1996).

Under Oklahoma law, "a municipality is not liable for any act or omission of an employee acting outside the scope of employment." *Id.* at 916. *See* Okla. Stat. tit. 51, § 153(A) (stating that a political subdivision shall not be liable under the OGTCA "for any act or omission of an employee acting outside the scope of the employee's employment"). The "scope of employment" is defined under the OGTCA as the "performance by an employee acting in good faith within the duties of the employee's office or employment or of tasks lawfully assigned . . . ." Okla. Stat. tit. 51, § 152(12). If the employee acted "maliciously, or in bad faith," an employee could not be acting within the scope of employment. *Nail*, 911 P.2d at 916. Because a malicious prosecution claim includes "elements of bad faith," a municipality is immune from liability under the OGTCA. *Id.* Correspondingly, if the employee "was acting in good faith and hence within the scope of employment," then the plaintiff "cannot prove his case because he cannot establish the necessary element of malice." *Parker v. City of Midwest City*, 850 P.2d 1065, 1068 (Okla. 1993). *See Wade v. City of Tulsa*, No. 19-CV-120-JED-FHM, 2019 WL 3769631, at *9 (N.D. Okla. Aug. 9, 2019) ("Oklahoma courts have determined that claims with malice as a necessary element – such as malicious prosecution claims – may not be maintained against a municipality under the OGTCA because the malice element necessarily negates the good faith necessary to showing an employee acted in the scope of employment") (collecting cases).

Given these constraints, City is necessarily immune from suit for Plaintiff's malicious prosecution claim. Plaintiff alleges Ferguson acted "outside the bounds of lawful police procedure," "without probable cause," and "with malice" in initiating criminal proceedings against Plaintiff. Compl. ¶¶ 35-36. In his response brief, Plaintiff argues Ferguson was acting within the scope of his employment during the incidents at issue, but Plaintiff does not directly address the malicious prosecution claim or the requirements of the OGTCA. As a result, City is immune from this malicious prosecution claim.

### 2.      IIED (Count VII)

City seeks dismissal of this Oklahoma claim under Rule 12(b)(6), arguing it is immune from this claim. "To establish a cause of action for intentional infliction of emotional distress, a plaintiff must prove extreme and outrageous conduct done intentionally or recklessly by the defendant which resulted in severe emotional distress in the plaintiff." *Ridings v. Maze*, 414 P.3d 835, 839 (Okla. 2018). Plaintiff alleges that Ferguson's conduct in using excessive force against Plaintiff during both arrests was "outrageous" and "exceeds all bounds of decency and is utterly intolerable in a civilized society." Compl. ¶ 40.

City argues that it cannot be liable for Ferguson's alleged conduct because City is immune from intentional torts committed by its employees acting outside the scope of employment. *See* Okla. Stat. tit. 51, § 153(A). As explained above, "a governmental employee only acts within the scope of his employment when he acts in good faith." *McMullen v. City of Del City*, 920 P.2d 528, 530 (Okla. Civ. App. 1996). However, "[t]here is no way to prove a claim for [IIED] if the defendant has acted in good faith." *Id.* at 531. *See Byrd v. Ind. Sch. Dist. No. 8 of Tulsa Cty.*, No. 23-CV-00404-CDL, 2024 WL 4350800, at *14 (N.D. Okla. Sept. 30, 2024) (finding school district immune from Oklahoma IIED claim under OGTCA, "because such a claim necessarily excludes good faith conduct, and an employee committing that tort could not be considered to have been

acting within the scope of employment for purposes of the OGTCA") (citing *McMullen*, 920 P.2d at 531, *Shaw v. City of Okla. City*, 380 P.3d 894, 897 (Okla. Civ. App. 2016)).  Plaintiff does not directly respond to City's arguments on this claim.  Therefore, for the same reason City is immune from the malicious prosecution claim, City is also immune from the IIED claim.

### 3.    Negligent Training and Supervision (Count VIII)

Finally, City seeks dismissal of this claim under Rule 12(b)(6).  As explained above, although titled as a second IIED claim, Count VIII appears to be an Oklahoma claim for negligent training and supervision against City.  Compl. ¶¶ 43-46.  Plaintiff's allegations related to this claim are conclusory and lack any specific factual allegations.  *See* Compl. ¶ 45 ("Defendants breached this duty [to properly train and discipline employees, including Ferguson] by failing to monitor control, train and supervise Sgt. Ferguson, despite clear evidence and constructive notice of his propensity for excessive force, biased decision-making, and disregard for constitutional rights.").  Plaintiff does not identify, for example, any prior incidents indicating Ferguson had a propensity for excessive force, biased decision-making, or disregard for constitutional rights, nor does Plaintiff identify any specific deficiencies in Ferguson's training.  Plaintiff does not directly respond to City's arguments on this claim.  Plaintiff's bare-bones allegations do not suffice under the *Twombly* pleading standard.[5]

---

[5] Because the Court dismisses all of Plaintiff's Claims, the Court does not address Plaintiff's demand for injunctive relief, which is separately addressed in City's Motion to Dismiss (ECF No. 9 at 13).

III.    **Motion to Dismiss – BAPD**

Defendant BAPD specially appears and seeks dismissal of all claims against it pursuant to Federal Rules of Civil Procedure 12(b)(6) and 17(b).[6]  ECF No. 8.  BAPD argues that it is not a proper party to be sued pursuant to § 1983 or Oklahoma law.  Plaintiff did not file a response to BAPD's motion.

"Generally, governmental sub-units are not separate suable entities that may be sued under § 1983." *Hinton v. Dennis*, 362 F. App'x 904, 907 (10th Cir. 2010).  *See Martinez v. Winner*, 771 F.2d 424, 444 (10th Cir. 1985) (finding the "City of Denver Police Department" was not a separate suable entity), *judgment vacated as moot*, 800 F.2d 230 (10th Cir. 1986); *Lindsey v. Thomson*, 275 F. App'x 744, 747 (10th Cir. 2007) (finding "Healdton Police Department" and "Wilson Police Department" were not legally suable entities); *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992) ("[P]olice departments are not usually considered legal entities subject to suit").  Under Oklahoma law, an incorporated municipality such as City has the power to sue and be sued, but no such power is available to a municipal agency.  *See* Okla. Stat. tit. 11, § 22-101(1) (stating that all "incorporated municipalities" shall have the powers to "[s]ue and be sued"); Okla. Stat. tit. 51, § 152 (defining "municipality" as "any incorporated city or town, and all institutions, agencies or instrumentalities of a municipality").

Given this authority, and Plaintiff's lack of response, the Court finds that BAPD is not a separately suable entity apart from City.  The claims against BAPD, therefore, are subject to dismissal with prejudice.

---

[6] Rule 17(b) provides that capacity to sue or be sued is determined for entities such as BAPD "by the law of the state where the court is located." Fed. R. Civ. P. 17(b)(3).  In this case, Oklahoma law would govern the issue of capacity.

## IV.    Leave to File Amended Complaint

Within his response brief, Plaintiff seeks leave to file an amended complaint to correct deficiencies in his Complaint.  ECF No. 13 at 7.  Plaintiff's request is denied at this time, but without prejudice to filing a separate motion for leave to file an amended complaint.  Plaintiff should attach the proposed amended complaint to any such motion.

## V.    Dismissal of Defendant(s) "Unknown Broken Arrow Police Officers"

Defendant(s) "Unknown Broken Arrow Police Officers" remain unidentified defendants in this case, despite the passage of over six months since Plaintiff filed the Complaint.  Pursuant to Federal Rule of Civil Procedure 10(a), a caption of a complaint must contain the names of all parties.  The "Federal Rules of Civil Procedure do not explicitly allow the naming of fictitious or anonymous parties in a lawsuit." *Culp v. Williams,* No. 10-cv-886-CMA-CBS, 2011 WL 1597686 at *3 (D. Colo. Apr. 27, 2011), *aff'd,* 456 F. App'x 718 (10th Cir. 2012).  Therefore, "an action may be dismissed if the defendant is not sufficiently identified to permit service of process." *Id.* (quotation omitted).  As a result, the Court hereby dismisses defendant(s) "Unknown Broken Arrow Police Officers" without prejudice.

## VI.    Conclusion

For the reasons detailed above, Defendant City of Broken Arrow's Motion to Dismiss (ECF No. 9) is **GRANTED**.  Defendant Broken Arrow Police Department's Motion to Dismiss (ECF No. 8) is **GRANTED**.  Plaintiff's claims against City of Broken Arrow are **DISMISSED WITHOUT PREJUDICE**.  Plaintiff's claims against Broken Arrow Police Department are **DISMISSED WITH PREJUDICE**.  Plaintiff's claims against Unknown Broken Arrow Police Officers are **DISMISSED WITHOUT PREJUDICE**.

Plaintiff's request for leave to amend the Complaint is **DENIED WITHOUT PREJUDICE**.  Plaintiff may file a motion to file an amended complaint to reassert any claims

dismissed herein without prejudice, attaching the proposed amended complaint, by November 21, 2025.  If Plaintiff files no such motion by the deadline, the Court will terminate Plaintiff's action as to all parties.

**SO ORDERED** this 7th day of November, 2025.

_Jodi F. Jayne_
**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**