IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RICHARD MCMAHON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 25-CV-207-JFJ |
| | ) |
| 1. CITY OF BROKEN ARROW, | ) |
| OKLAHOMA, a municipal corporation, | ) |
| 2. BROKEN ARROW POLICE | ) |
| DEPARTMENT, | ) |
| 3. MICHAEL FERGUSON, and | ) |
| 4. UNKNOWN BROKEN ARROW | ) |
| POLICE OFFICERS, | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

Before the Court is Plaintiff's Motion for Leave to File First Amended Complaint (ECF No. 21) ("Motion"). Defendants City of Broken Arrow and Broken Arrow Police Department filed a joint objection to Plaintiff's Motion (ECF No. 22). For reasons explained below, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

**I.   Procedural Background**

Plaintiff Richard McMahon ("Plaintiff") filed his Complaint (ECF No. 2) on April 25, 2025. Plaintiff alleged two separate incidents of constitutional violations against him involving Sergeant Michael Ferguson ("Ferguson") of the Broken Arrow Police Department ("BAPD") and other unnamed BAPD officers. The Court dismissed Ferguson without prejudice on August 13, 2025, due to Plaintiff's failure to effect service on Ferguson by the required deadline or to seek other relief. ECF No. 16. Defendants City of Broken Arrow ("City") and BAPD each moved to dismiss the Complaint on various grounds (ECF Nos. 8, 9). On November 7, 2025, the Court dismissed the Complaint without prejudice to Plaintiff's seeking leave to amend as to his claims

against Defendants City and Unknown Broken Arrow Police Officers. ECF No. 20. The Court dismissed Plaintiff's claims against BAPD with prejudice, because the Court found BAPD was not a proper party to be sued. *Id.* at 15. The Court permitted Plaintiff to file a motion to amend the Complaint "to reassert any claims dismissed herein without prejudice" by November 21, 2025. *Id.* at 16-17.

On November 21, 2025, Plaintiff filed the Motion, attaching a proposed First Amended Complaint ("FAC"). ECF No. 21. The FAC seeks to re-add Ferguson as a defendant, despite Ferguson's early dismissal from the case. Plaintiff also seeks to re-assert claims against City, BAPD, and Unknown Broken Arrow Police Officers. ECF No. 21-1.

Plaintiff's FAC includes more detailed factual allegations regarding the two incidents. In addition to his originally asserted claims, Plaintiff added one new claim titled "Count V – 42 U.S.C. § 1983 – Municipal Liability (Monell)" against City, which provides further detail for the basis of his claim for municipal liability against City. As in the original Complaint, Plaintiff asserts claims in the FAC under 42 U.S.C. § 1983 against Defendants for (1) unreasonable seizure in violation of Plaintiff's Fourth Amendment rights (Count I); (2) excessive force in violation of Plaintiff's Fourth Amendment rights (Count II); (3) violation of Plaintiff's due process rights under the Fourteenth Amendment (Count III); (4) constitutional deprivations under the Fourth and Fourteenth Amendments, which resulted from Defendants' individual actions and the policies and customs of City and BAPD (Count IV); and (5) *Monell* municipal liability by City, which resulted from City's deliberate indifference to Plaintiff's constitutional rights through its policies, customs, and failure to adequately train, supervise, and discipline its police officers, including Ferguson

(Count V).[1]  Plaintiff further asserts state-law claims against Defendants for (1) malicious prosecution (Count VI); (2) intentional infliction of emotional distress ("IIED"); and (3) negligence (Count VIII).[2]

In their joint objection, City and BAPD argue that leave to amend should be denied for several reasons: (1) Plaintiff should not be permitted to re-add Ferguson as a defendant because the time to serve Ferguson has long expired; (2) amendment would be futile as to BAPD, because it lacks the capacity to be sued; and (3) amendment would be futile as to City, because Plaintiff's proposed First Amended Complaint still fails to adequately plead municipal liability against it.

## II. Legal Standard - Rule 15(a)(2)

Under Federal Rule of Civil Procedure 15(a), once the time for filing an amended pleading as a matter of course has expired, then "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The court "should freely give leave when justice so requires." *Id.* It remains within the court's discretion to grant or deny leave to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962). However, "[r]efusing leave to amend is generally only justified upon a showing of undue delay, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or undue prejudice to the opposing party, or futility of amendment, etc." *Castleglen, Inc. v. Resol. Tr. Corp.*, 984 F.2d 1571, 1585 (10th Cir. 1993) (citing *Foman*, 371 U.S. at 182). "The party contesting the motion to amend has the burden

---

[1] The Court reads the FAC to assert a single "Count V" against City for municipal liability, even though Plaintiff asserts Count V twice. The second "Count V" (FAC ¶¶ 54-58) is identical to Count V alleged against City in the original Complaint.

[2] As in the original Complaint, the FAC's Count VIII appears to be an Oklahoma claim for negligent training and supervision against City despite its title as a second IIED claim. ECF No. 21-1 ¶¶ 68-70. Although the Court discussed the unclear nature of Count VIII in its November 7, 2025, Opinion and Order, Plaintiff has not altered the title or content of this claim.

3

of proving that the amendment should be refused on one of these bases." *Ratzlaff v. The Commons*, No. CIV-23-1136-G, 2025 WL 392729, at *1 (W.D. Okla. Feb. 4, 2025) (quotation omitted).

## III. Discussion

### A. Court Denies Leave to Re-Add Ferguson as Defendant

In the November 7, 2025, Opinion and Order, the Court permitted Plaintiff to seek leave to amend the Complaint "to reassert any claims dismissed herein without prejudice." ECF No. 20 at 16-17. The Court did not grant express permission to re-add Ferguson as a defendant. The Court dismissed Ferguson from the case on August 13, 2025, after Plaintiff failed to effect service on Ferguson by the required deadline of July 25, 2025, or file a motion requesting an extension of the time for service. ECF No. 16.

Plaintiff cites no authority indicating that the filing of an amended complaint permits extension of the 90-day service period provided in Federal Rule of Civil Procedure 4(m) as to an existing defendant. To the contrary, such time period "is not restarted by the filing of an amended complaint except as to those defendants newly added in the amended complaint." *Bolden v. City of Topeka*, 441 F.3d 1129, 1148 (10th Cir. 2006). "This construction of the rule prevents the plaintiff from repeatedly filing amended complaints to extend the time for service indefinitely." *Id.* (quotation omitted). Otherwise, a dilatory plaintiff could evade the rule's time deadline "simply by filing an amended complaint when it felt like effecting service." *Id.* at 1148-49. Plaintiff also has not sought to extend the time to serve Ferguson or attempted to explain his reasons for failing to serve Ferguson within the time for service.

Because the time to serve Ferguson already expired before Plaintiff sought leave to amend the Complaint, and Plaintiff did not seek to extend the service period as to Ferguson, the Court denies leave to re-add Ferguson as a defendant in the case.

B.   **Court Denies Leave to Assert Claims Against BAPD**

The FAC identifies BAPD as a defendant in the case caption, and the FAC refers to BAPD throughout the allegations. As explained in the November 7, 2025, Opinion and Order, BAPD is an improper party to this action, because it lacks the capacity to be sued. ECF No. 20 at 15. The Court already dismissed BAPD *with prejudice*. *Id.* at 16. For this reason, the Court denies leave to amend with respect to any claims asserted against BAPD.

C.   **Court Grants Leave to Assert Limited Federal Municipal Claims Against City**

City argues the Court should deny leave to amend as to the claims against it based on futility. A proposed amendment is futile when the claim, as amended, would be subject to dismissal because the plaintiff "fails to allege facts that would allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fields v. City of Tulsa*, 753 F.3d 1000, 1012-13 (10th Cir. 2014) (citation modified). "The futility question is functionally equivalent to the question whether a complaint may be dismissed for failure to state a claim." *Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999). A claim should be dismissed for failure to state a claim where the factual pleading does not allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

1.   **Pleading Requirements – Municipal Liability**

Section 1983 liability may be imposed on a municipality such as City when a constitutional violation is inflicted pursuant to a government policy or custom. *Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658, 694 (1978). A plaintiff seeking to prove municipal liability must allege facts demonstrating three elements: "(1) official policy or custom, (2) causation, and (3)

state of mind." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013).

As to the first element, identifying a municipal policy "ensures that a municipality is held liable only for those deprivations resulting from the decision of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 403-04 (1997) (citing *Monell*, 436 U.S. at 694). A municipal policy or custom may take any one of five forms:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions – and the basis for them – of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (citation modified).

As to the second element, a plaintiff must plead that there is a "direct causal link between the policy or custom and the injury alleged." *Id.* (quotation omitted). *See Haines v. Fisher*, 82 F.3d 1503, 1507 (10th Cir. 1996) (explaining that the municipality's official policy must be the "moving force for the constitutional violation in order to establish the liability of a government body under § 1983") (citing *Monell*, 436 U.S. at 694). The challenged policy or practice must be "closely related to the violation of the plaintiff's federally protected right." *Schneider*, 717 F.3d at 770 (quotation omitted). "Therefore, it is only when the execution of the government's policy or custom inflicts the injury that the municipality may be held liable under § 1983." *Hollingsworth v. Hill*, 110 F.3d 733, 744 (10th Cir. 1997) (citation modified).

As to the third element, a plaintiff must allege that the facially lawful municipal action was taken with "deliberate indifference as to its known or obvious consequences." *Schneider*, 717 F.3d

6

at 770 (quoting *Brown*, 520 U.S. at 407). This standard is satisfied where the municipality has "actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Id.* at 771 (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998)). While "notice" is most often shown by alleging a "pattern of tortious conduct," in a "narrow range of circumstances," deliberate indifference may be found "if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction." *Id.* (quoting *Barney*, 143 F.3d at 1307).

      **2.**    **Analysis**

In the FAC, Plaintiff alleges two incidents that resulted in constitutional violations. First, on July 28, 2023, Plaintiff reported to police that he had been assaulted and battered by a neighbor ("first incident"). FAC ¶ 12. When Ferguson and other BAPD officers responded to the call at Plaintiff's residence, Plaintiff presented evidence to the officers corroborating his account of assault. *Id.* ¶ 13. However, the BAPD officers accepted Plaintiff's neighbor's version of events and disregarded Plaintiff's evidence, demonstrating bias against Plaintiff. *Id.* An officer ordered Plaintiff to "turn around," but Plaintiff did not comply. *Id.* ¶¶ 14-15. As a result, the officer "used force on Plaintiff on the porch, assaulted him, and arrested him for 'resisting arrest,' despite lacking reasonable suspicion or probable cause to seize or arrest Plaintiff." *Id.* ¶ 15.

Second, on May 29, 2024, Plaintiff alleges Ferguson and four other BAPD officers entered and secured Plaintiff's residence without a warrant, consent, or exigent circumstances, under the pretext of a traffic incident, in which a vehicle was partially blocking a cul-de-sac ("second incident"). *Id.* ¶¶ 17-18. Plaintiff alleges the officers used force "by slamming Plaintiff to the ground, causing physical injury, and arrested him." *Id.* ¶ 19. Ferguson allegedly stated on an officer body camera prior to entering Plaintiff's home that he hated Plaintiff, and that "[i]t would

7

give [him] great pleasure to take [Plaintiff] to jail tonight." *Id.* ¶ 20. Plaintiff "spent the night in jail and was released the next morning without charges." *Id.* ¶ 21.

Plaintiff added new municipal allegations in the FAC against City under the header, "City knowledge, review, ratification, and failure to train/supervise/discipline," *id.* ¶¶ 23-34, and he added a new "Count V" detailing his theories of *Monell* liability against City, *see id.* ¶¶ 50-53.[3] Although difficult to discern, the Court construes the FAC as asserting the following theories of municipal liability: (1) failure to adequately train and supervise officers on various Fourth Amendment issues, thereby causing the first incident, *id.* ¶ 51; (2) ratification of unconstitutional conduct and failure to train, supervise, and/or discipline officers on various Fourth Amendment issues, thereby causing the second incident, *see id.* ¶¶ 23, 50-52; and (3) ratification and failure to train, supervise, and/or discipline officers on various Fourth Amendment issues after the second incident, *see id.* ¶¶ 27, 50-52.

### a) Plaintiff Fails to Allege Basis for *Monell* Liability for First Incident

Plaintiff seeks to hold City liable for the first incident based on City's maintaining a custom and practice of "discounting or ignoring exculpatory evidence presented by victim or complainants on scene, which predictably results in unlawful seizures and arrests." *Id.* ¶ 50. Plaintiff also, but more vaguely, alleges a failure to train on excessive force prior to this incident. *Id.* ¶ 51.

Plaintiff has not adequately alleged facts to support a finding of any widespread custom or practice that caused the first incident. Pleading an informal policy or custom requires that the alleged misconduct was a "widespread practice that, although not authorized by written law or

---

[3] As explained *supra* note 1, the FAC still includes the prior version of "Count V" from the original Complaint, which the Court already found insufficiently pled. Now that the FAC and Count V include additional facts and more detailed allegations, the Court will permit the FAC to be filed including all allegations in both Counts V.

8

express municipal policy, is so permanent and well settled as to constitute a 'custom or usage' with the force of law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (quotation omitted). For a practice to be widespread, Plaintiff must allege other similar incidents occurring prior to the first incident. *See Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1290 (10th Cir. 2019) (rejecting argument that deputy's unprovoked attack on detainee in front of judge was sufficient to infer existence of municipal custom or practice, where plaintiff alleged only one similar incident of excessive force prior to his own injuries). *See also City of Okla. City v. Tuttle*, 471 U.S. 808, 823-24 (1985) (finding "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker"). In the FAC, Plaintiff alleges no additional facts to show a widespread practice or custom of constitutional violations via other similar events occurring prior to the first incident. Nor he has pointed to any written policies that would support a finding of *Monell* liability.

To the extent Plaintiff seeks to hold City liable for the first incident on a "single-incident" theory of municipal liability, Plaintiff's allegations fail. Such liability may attach in a narrow range of circumstances where a municipal policy or custom of deficient training causes an injury that is "obvious" and "closely related," and the municipality adopted the policy or custom with "deliberate indifference" to the injury. *Valdez v. Macdonald*, 66 F.4th 796, 815, 816-17 (10th Cir. 2023).[4] Here, Plaintiff failed to plead facts demonstrating that injuries flowing from the first incident were the "obvious" result of a specific municipal policy or custom, or deficient training,

---

[4] "Deliberate indifference" in this context requires satisfying a three-part test: (1) "the municipality's policymakers know to a moral certainty that their employees will confront a given situation"; (2) "the situation presents the employee with a difficult choice of the sort that training or supervision will make less difficult"; and (3) "the wrong choice will frequently cause the deprivation of a citizen's constitutional rights." *Id.* at 817 (citation modified).

9

in the broad categories of failing to properly assess evidence during an on-scene investigation and/or excessive force. Plaintiff's allegations are insufficiently particular as to how officers were inadequately trained or how his injuries from the first incident were an "obvious" consequence of that lack of training. *Cf. Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1320 (10th Cir. 2002) (reversing grant of summary judgment on single-incident § 1983 deliberate indifference claim that county failed to train its officers on booking procedures for inmates with obsessive-compulsive disorder, explaining that "given the frequency of the disorder, Davis County's scant procedures on dealing with mental illness and the prebooking officers' apparent ignorance to [plaintiff's] requests for medication, a violation of federal rights is quite possibly a 'plainly obvious' consequence of Davis County's failure to train its prebooking officers to address the symptoms") (quotation omitted). Plaintiff may not hold City liable for the first incident under any theory of *Monell* liability. Amendment to assert such liability would be futile.

### b) **Plaintiff Adequately Alleges *Monell* Liability for Second Incident**

Plaintiff alleges City ratified officers' unconstitutional conduct by failing to take disciplinary action against Ferguson or any other involved officer and failing to implement "remedial training or policy revisions" after the first incident, despite Plaintiff's complaint to BAPD leadership and City. *Id.* ¶¶ 23, 28, 52. City argues this theory of liability fails, because Plaintiff fails to identify specific action taken by specific policymaker(s) sufficient to demonstrate ratification.

The Court rejects City's contention and finds Plaintiff has adequately alleged City's liability for ratification/failure to train, supervise, or discipline Ferguson and the other officers involved in the first incident. As to the first element, Plaintiff identifies the Broken Arrow Chief of Police and/or City Manager as the final policymakers, and he alleges that those policymakers

10

ratified the wrongful arrest and excessive force used against Plaintiff by failing to discipline or provide remedial training to Ferguson or the other officers involved in the first incident, even after Plaintiff complained to BAPD leadership and City. The Court finds these allegations sufficiently specific to satisfy the first element of municipal liability. *Cf. London v. Beaty*, 612 F. App'x 910, 914 (10th Cir. 2015) (finding conclusory allegations against city on Fourth Amendment claim failed to meet *Twombly* standard, where plaintiff "wholly failed" to "identify [the city's] policymakers and the specific actions they took that resulted in the deprivation of his fourth amendment rights").

      The Court further finds Plaintiff adequately alleged that City's ratification/failure to train, supervise, or discipline after the first incident were the "moving force" behind the second incident. "Rarely if ever is the failure of a police department to discipline in a specific instance an adequate basis for municipal liability under *Monell*." *Schneider*, 717 F.3d at 777 (citation modified). However, in this case Plaintiff alleges two instances of similar alleged constitutional violations involving Plaintiff, Ferguson, and other various BAPD officers at Plaintiff's home. Plaintiff alleges City should have imposed discipline on Ferguson and the other officers and/or required further training or supervision of those officers after the first instance of excessive force and wrongful arrest. Plaintiff allegedly complained to BAPD leadership and City after the first incident, but City failed to take action to prevent another similar incident against Plaintiff. Less than a year later, Ferguson and other BAPD officers allegedly committed essentially the same constitutional violations against Plaintiff at his home, accompanied by Ferguson's statement on his body camera demonstrating animus against Plaintiff. In these circumstances, City's failure to discipline, supervise, or further train Ferguson or other involved officers after the first incident could reasonably be deemed the cause of Plaintiff's injuries from the second incident.

11

As to the "state of mind" element, the Court finds sufficient allegations that City had "actual or constructive notice" that its failure to discipline Ferguson and the other involved officers after the first incident was "substantially certain to result in a constitutional violation," and it "consciously or deliberately ch[ose] to disregard the risk of harm." *Schneider*, 717 F.3d at 771. Because both incidents involved at least Ferguson, and possibly other common BAPD officers, and involved a similar set of circumstances at Plaintiff's residence, the Court finds these allegations, if proven, may fall into the "narrow range of circumstances" where the repeated violations of constitutional rights was a "highly predictable or plainly obvious consequence" of City's failure to discipline or impose corrective action on Ferguson or the other officers involved in the first incident involving Plaintiff. *Id.*

Plaintiff has sufficiently pled a factual basis for municipal liability against City based on City's actions or inactions leading to the second incident. *See Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009) ("A failure to investigate or reprimand might . . . cause a future violation by sending a message to officers that such behavior is tolerated."). The Court therefore grants leave to amend to assert a *Monell* claim against City related to the second incident.[5]

         **c)**      **Plaintiff Fails to Allege Municipal Liability Premised on City's Conduct After Second Incident**

Plaintiff alleges that, following the second incident, City "ultimately terminated Ferguson's employment" but "did not discipline, retrain, reprimand, or otherwise impose corrective action on any of the other four BAPD officers who participated in the May 29, 2024 warrantless home entry, use of force, and arrest." *Id.* ¶¶ 26-27. To the extent Plaintiff alleges municipal liability based on

---

[5] To the extent Plaintiff intends to assert any "widespread" custom as the moving force behind the second incident, the Court rejects this theory of liability for the same reasons explained above in Part III.C.2(a). Plaintiff has made no allegations of any widespread practices. Instead, he has survived City's objections to the Motion based on City's alleged failures in response to Plaintiff's complaints regarding Ferguson and the other officers who participated in the first incident.

"ratification" of officer conduct after this second incident, City cannot be held liable under *Monell* for such practices. "[B]asic princip[les] of linear time prevent [the court] from seeing how conduct that occurs *after* the alleged violation could have somehow caused that violation." *Cordova*, 569 F.3d at 1194. *See also Schwartz for Est. of Finn v. City & Cnty. Of Denver*, 2023 WL 1879305, at *3 (D. Colo. Feb. 10, 2023) (rejecting "post-conduct" ratification theory, and collecting cases explaining ratification-based municipal liability claims require that any ratification must *precede* the alleged constitutional violation to meet the causation element). Subsequent conduct may be relevant circumstantial evidence that City routinely encouraged similar illegal conduct but does not itself constitute a "causal connection" in this case. *See Cordova*, 569 F.3d at 1194. Plaintiff may not assert this theory of *Monell* liability against City. Amendment to assert such liability would be futile.

### D. Court Denies Leave to Assert State-Law Claims for Malicious Prosecution and IIED

#### 1. Malicious Prosecution (Count VI)

Although City does not raise specific objections to Plaintiff's re-alleged Oklahoma claim for malicious prosecution, the FAC does not allege any additional facts that would overcome City's immunity from this claim.[6] Indeed, the wording of this claim in the FAC appears to be identical to that of the Complaint, despite the Court's dismissal of this claim on immunity grounds. As explained in the November 7, 2025, Opinion and Order, a malicious prosecution claim requires proof of five essential elements: "1) defendant's filing a former action, 2) its successful termination in favor of plaintiff, 3) defendant's want of probable cause for pressing the former action against

---

[6] Although the FAC does not identify the basis for liability regarding this malicious prosecution claim, the parties appeared to agree in prior briefing that this claim sounds in Oklahoma law, rather than federal § 1983 liability, and Plaintiff does not allege otherwise in the FAC. Therefore, the Court addresses Count VI as a state-law claim.

13

plaintiff, 4) the presence of malice in defendant's conduct, and 5) damages." *Lierly v. Tidewater Petroleum Corp.*, 139 P.3d 897, 903, *as corrected* (Okla. 2006).  Plaintiff's tort claim for malicious prosecution against City would fall under the Oklahoma Governmental Tort Claims Act ("OGTCA"), which "is the exclusive remedy for an injured plaintiff to recover against a governmental entity in tort."  *Nail v. City of Henryetta*, 911 P.2d 914, 917 (Okla. 1996).

Under Oklahoma law, "a municipality is not liable for any act or omission of an employee acting outside the scope of employment."  *Id.* at 916.  *See* Okla. Stat. tit. 51, § 153(A) (stating that a political subdivision shall not be liable under the OGTCA "for any act or omission of an employee acting outside the scope of the employee's employment").  The "scope of employment" is defined under the OGTCA as the "performance by an employee acting in good faith within the duties of the employee's office or employment or of tasks lawfully assigned . . . ."  Okla. Stat. tit. 51, § 152(12).  If the employee acted "maliciously, or in bad faith," an employee could not be acting within the scope of employment.  *Nail*, 911 P.2d at 916.  Because a malicious prosecution claim includes "elements of bad faith," a municipality is immune from liability under the OGTCA.  *Id.*  Correspondingly, if the employee "was acting in good faith and hence within the scope of employment," then the plaintiff "cannot prove his case because he cannot establish the necessary element of malice."  *Parker v. City of Midwest City*, 850 P.2d 1065, 1068 (Okla. 1993).  *See Wade v. City of Tulsa*, No. 19-CV-120-JED-FHM, 2019 WL 3769631, at *9 (N.D. Okla. Aug. 9, 2019) ("Oklahoma courts have determined that claims with malice as a necessary element – such as malicious prosecution claims – may not be maintained against a municipality under the OGTCA because the malice element necessarily negates the good faith necessary to showing an employee acted in the scope of employment") (collecting cases).

Given these constraints, City is necessarily immune from suit for Plaintiff's malicious prosecution claim.  Plaintiff alleges Ferguson acted "outside the bounds of lawful police

14

procedure," "without probable cause," and "with malice" in initiating criminal proceedings against Plaintiff. FAC ¶¶ 60-61. City is still immune from this malicious prosecution claim, and amendment to add this claim would be futile. Plaintiff did not attempt to cure these deficiencies via amendment. Therefore, the Court denies leave to amend to include this claim.

### 2. IIED (Count VII)

Although City does not raise objections to Plaintiff's re-alleged Oklahoma claim for IIED, amendment of this claim against City is likewise futile, because City is immune from this claim. Plaintiff did not change the wording of this this claim or add any factual allegations to support such a claim against City, despite the Court's prior dismissal of this claim. "To establish a cause of action for intentional infliction of emotional distress, a plaintiff must prove extreme and outrageous conduct done intentionally or recklessly by the defendant which resulted in severe emotional distress in the plaintiff." *Ridings v. Maze*, 414 P.3d 835, 839 (Okla. 2018). Plaintiff alleges that Ferguson's conduct in using excessive force against Plaintiff during both arrests was "outrageous" and "exceeds all bounds of decency and is utterly intolerable in a civilized society." FAC ¶ 65.

As explained in the November 7, 2025, Opinion and Order, City is immune from intentional torts committed by its employees acting outside the scope of employment. *See* Okla. Stat. tit. 51, § 153(A). As explained above, "a governmental employee only acts within the scope of his employment when he acts in good faith." *McMullen v. City of Del City*, 920 P.2d 528, 530 (Okla. Civ. App. 1996). However, "[t]here is no way to prove a claim for [IIED] if the defendant has acted in good faith." *Id.* at 531. *See Byrd v. Ind. Sch. Dist. No. 8 of Tulsa Cty.*, No. 23-CV-00404-CDL, 2024 WL 4350800, at *14 (N.D. Okla. Sept. 30, 2024) (finding school district immune from Oklahoma IIED claim under OGTCA, "because such a claim necessarily excludes good faith conduct, and an employee committing that tort could not be considered to have been

acting within the scope of employment for purposes of the OGTCA") (citing *McMullen*, 920 P.2d at 531, *Shaw v. City of Okla. City*, 380 P.3d 894, 897 (Okla. Civ. App. 2016)).  Therefore, for the same reason City is immune from the malicious prosecution claim, City is also immune from the IIED claim.  The Court denies leave to amend to include this claim.

>    E.  **Court Denies Leave to Assert State-Law Claim for Negligent Training and Supervision (Count VIII)**

City does not specifically object to Plaintiff's claim for negligent training and supervision. As explained above, although titled as a second IIED claim, Count VIII appears to be an Oklahoma claim for negligent training and supervision against City.  FAC ¶¶ 68-70.  The Court identified this apparent mismatch in the November 7, 2025, Opinion and Order, but Plaintiff has not amended this claim to clarify his intent.  Under this claim, Plaintiff alleges "Defendants breached this duty [to properly train and discipline employees, including Ferguson] by failing to monitor, control, train and supervise Sgt. Ferguson, despite clear evidence and constructive notice of his propensity for excessive force, biased decision-making, and disregard for constitutional rights."  FAC ¶ 69. The Court previously dismissed this claim as insufficiently pled.  *See* ECF No. 20 at 14.  Because the Court will permit amendment of federal claims against City based on additional factual allegations, the Court re-examines this claim for sufficiency of pleading.

As with Plaintiff's other Oklahoma claims against City, the OGTCA provides the exclusive remedy for a "negligent training and supervision" claim against City.  *See Nail*, 911 P.2d at 917; Okla. Stat. tit. 51, § 153(B).  Although City does not raise the issue, the Court finds that City is immunized from liability for this claim based on the OGTCA's "discretionary function" exemption.  The OGTCA exempts a municipality from liability for any claim that results from the "[p]erformance of or the failure to exercise or perform any act or service which is in the discretion of the state or political subdivision or its employees."  Okla. Stat. tit. 51, § 155(5).  To identify

"discretionary" decisions, Oklahoma courts hold that "initial policy level or planning decisions are considered discretionary and hence immune, whereas operational level decisions made in the performance of policy are considered ministerial and not exempt from liability." *Nguyen v. Oklahoma,* 788 P.2d 962, 964-65 (Okla. 1990).

The Oklahoma Supreme Court has not addressed the question of whether a municipality's failure to train, supervise, monitor, and/or control its employees falls under the § 155(5) discretionary function exception. *See Langkamp v. Mayes Emergency Servs. Tr. Auth.*, No. 16-CV-0676-CVE-FHM, 2017 WL 875483, at *4 (N.D. Okla. Mar. 3, 2017), *motion for relief from judgment granted*, No. 16-CV-0676-CVE-FHM, 2017 WL 1102650 (N.D. Okla. Mar. 23, 2017). However, the "clear weight of authority" indicates that such decisions are actions that implicate a municipality's "policy and planning functions and therefore fall under the discretionary function exemption of § 155(5)." *Id.* (collecting cases supporting finding that political entity's hiring, training, supervision, monitoring, and retention decisions fall under "discretionary" function exemption of § 155(5)). *See Manning v. City of Tulsa*, No. 17-CV-336-EFM-SH, 2023 WL 11643939, at *8 & n.52 (N.D. Okla. Feb. 9, 2023) (same); *White v. City of Tulsa, Okla.*, No. 13-CV-128-TCK-PJC, 2013 WL 4784243, at *5 (N.D. Okla. Sept. 5, 2013) (finding negligence claim based on city's acts of "training officers, supervising officers, and conducting investigations of citizen complaints" was barred by discretionary function exemption of OGTCA).

Based on Plaintiff's allegations of negligence against City in the FAC, the Court concludes that these allegations fall within City's discretionary policy and planning functions, which are exempted from OGTCA liability. Therefore, the Court denies leave to amend to include the claim labeled as Count VIII.

F. **Court Grants Leave to Include Defendant(s) "Unknown Broken Arrow Police Officers"**

Defendant(s) "Unknown Broken Arrow Police Officers" remain unidentified defendants in this case. Pursuant to Federal Rule of Civil Procedure 10(a), a caption of a complaint must contain the names of all parties. However, the Court will allow Plaintiff a period of discovery to uncover the identities of the unknown BAPD officers. As a result, the Court permits amendment to include defendant(s) "Unknown Broken Arrow Police Officers."

IV. **Conclusion**

For the reasons detailed above, Plaintiff's Motion for Leave to File First Amended Complaint (ECF No. 21) is **GRANTED IN PART** and **DENIED IN PART**. Specifically:

- Leave to amend is DENIED as to Plaintiff's claims against Defendants (1) Michael Ferguson and (2) Broken Arrow Police Department. These entities shall not be included in the FAC case caption.

- Leave to amend is DENIED as to Plaintiffs' claims for (1) Malicious Prosecution (Count VI), (2) Intentional Infliction of Emotional Distress (Count VII), and (3) "Intentional Infliction of Emotional Distress" (Count VIII) (interpreted by the Court as a claim for negligent training and supervision). These claims shall not be included in the FAC.

- Leave to amend is GRANTED as to federal claims against Defendants (1) City of Broken Arrow (Count V) and (2) Unknown Broken Arrow Police Officers (Counts I-V), with limits on theories of municipal liability as stated above. Plaintiff may file "Count V" as it is currently written in the proposed FAC. However, this Opinion and Order controls the theories of municipal liability that will proceed to the summary judgment stage.

Plaintiff is **ORDERED** to file a First Amended Complaint that complies with this Opinion and Order no later than March 9, 2026.

**SO ORDERED** this 2nd day of March, 2026.

_____
**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**